# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00621-SCT

*EQUIFIRST CORPORATION*

*v.*

*MELVIN JACKSON, XAVIER MANNING AND*
*BRENDA MANNING*


| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2004 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM CLINTON PENTECOST |
| | SHERYL BEY |
| ATTORNEYS FOR APPELLEES: | FRANK S. THACKSTON, JR. |
| | C. W. WALKER, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 02/02/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


EN BANC.

EASLEY, JUSTICE, FOR THE COURT:

## PROCEDURAL HISTORY

¶1.     Melvin Jackson (Jackson) and Xavier and Brenda Manning (the Mannings), collectively known as "the Borrowers," filed suit against EquiFirst Corporation (EquiFirst) and Mortgage Stop, Inc., (Mortgage Stop) in the Circuit Court of Leflore County, Mississippi.     The Borrowers alleged various causes of actions associated with the contention that Mortgage Stop, with EquiFirst's knowledge, consent, and encouragement, targeted individuals to purchase homes at inflated values.     EquiFirst removed the case to federal court where EquiFirst filed its

first motion to compel arbitration. The case was remanded to the Circuit Court of Leflore County.

¶2. EquiFirst then filed another motion seeking to compel arbitration. After conducting a hearing, the trial court denied the motion to compel arbitration. The trial court's order provided that the motion to compel arbitration was "denied without prejudice to [the] Defendant's right to assert the arbitration issue after discovery is complete." EquiFirst sought permission for interlocutory appeal of the order denying the motion to compel arbitration from the trial court. The trial court certified its ruling for interlocutory appeal. EquiFirst filed its notice of appeal to this Court.

¶3. On appeal, EquiFirst raises the following issue: whether the trial court erred in denying EquiFirst's motion to compel arbitration.

## FACTS

¶4. Jackson contacted Kenneth Ellis (Ellis) regarding a house for sale at 118 Sycamore Street, Greenwood, Mississippi. Jackson obtained Ellis's name from a Coldwell Banker's "for sale" sign in front of the house. Jackson contacted Mortgage Stop, a third-party, retail mortgage broker, in Jackson, Mississippi, about purchasing the home. Mortgage Stop submitted Jackson's application to various wholesale mortgage lenders, including EquiFirst. EquiFirst accepted the terms and conditions and entered into a mortgage with Jackson at the loan closing. Ellis arranged the loan closing at the Fisher Law Office. Bobby Fisher is a Greenwood attorney selected by EquiFirst to act as its closing attorney. Jackson was present at the loan closing along with Ellis, Fisher, and the home sellers.

2

¶5.     Similarly, the Mannings contacted Ellis about helping them purchase a home. The Mannings decided they would purchase a home at 205 Fitzhugh in Itta Bena, Mississippi. The Mannings contend Ellis supplied the name of someone at Mortgage Stop in Jackson for financing. Mortgage Stop submitted the Mannings' application to various wholesale mortgage lenders, including EquiFirst. EquiFirst accepted the terms and conditions and entered into a mortgage with the Mannings at the loan closing. Ellis arranged the loan closing at the Fisher Law Office. The Mannings were present at the closing along with Ellis, Fisher, Lee Pruitt, and two unknown men.

## DISCUSSION

¶6.     EquiFirst contends the trial court erred in failing to compel arbitration because the parties agreed to arbitrate the disputes in question. EquiFirst maintains the signed arbitration provisions, arbitration riders, are not prohibited by a statute or policy or any external legal constraints. The Borrowers contend the trial court properly denied the motion to compel arbitration. The Borrowers do not contest that they signed the arbitration provisions. The Borrowers state they were told the "title/name" of each document and told that they had to sign each document and that one of the documents mentioned to them was an arbitration rider. The Borrowers do not contend anyone prevented them from reading the documents. However, they admit they did not read the provisions or any of the documents signed at the loan closing.

¶7.     Each of the arbitration riders were on a separate document and contained the following language:

Any claim, dispute or controversy (whether in contract, tort or otherwise) arising from or related to the loan evidenced by the Note, including but not limited to all statutory claims, any claim, dispute or controversy that may arise out of or is based on the relationships which result from the Borrower's application to the lender for the loan, the closing of the loan, or the servicing of the loan, or any dispute or controversy over the applicability or enforceability of this arbitration agreement or the entire agreement between Borrower and Lender (collectively "claims"), shall be resolved, upon the election of either Borrower or Lender, by binding arbitration, and not by court action.

¶8.     Furthermore, directly above the Borrowers' signatures, all capital, bold-face typesetting, the additional language provided:

> **NOTICE:   WHEN YOU SIGN THIS ARBITRATION RIDER, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE MAY BE DECIDED EXCLUSIVELY BY ARBITRATION.  YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH A CLAIM OR DISPUTE.   DISCOVERY IN ARBITRATION PROCEEDINGS IS LIMITED IN THE MANNER PROVIDED BY THIS AGREEMENT AND THE RULES OF ARBITRATION.  THE ARBITRATOR'S DECISION WILL GENERALLY BE FINAL AND BINDING.  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.  IT IS IMPORTANT THAT YOU READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY BEFORE SIGNING THIS ARBITRATION RIDER.**
>
> **BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.**

¶9.     The decision to grant or deny a motion to compel arbitration is reviewed by this Court de novo. ***Doleac v. Real Estate Professionals, LLC***., 911 So. 2d 496, 501 (Miss. 2005); ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002).  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so

4

to submit." ***Pre-Paid Legal Services, Inc. v. Battle***, 873 So. 2d 79, 83 (Miss. 2004) (quoting ***AT & T Technologies, Inc. v. Communications Workers of America***, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986)).

¶10.    "This Court has consistently recognized the existence of 'a liberal federal policy favoring arbitration agreements.'" ***Terminix International, Inc. v. Rice***, 904 So. 2d 1051, 1054-55 (Miss. 2004) (quoting ***Russell v. Performance Toyota, Inc.,*** 826 So. 2d 719, 722 (Miss. 2002)). Arbitration is firmly embedded in both our federal and state laws.    ***Pass Termite & Pest Control, Inc. v. Walker***, 904 So. 2d 1030, 1032-33 (Miss. 2004) (citing ***Russell***, 826 So. 2d 719 (Miss. 2002); ***East Ford***, 826 So. 2d 709 (Miss. 2002); ***IP Timberlands Operating Co. v. Denmiss Corp.***, 726 So. 2d 96 (Miss. 1998)).

## I.    WHETHER THE ARBITRATION RIDER IS PART OF A CONTRACT EVIDENCING INTERSTATE COMMERCE.

¶11.    In ***Battle***, 873 So. 2d at 82, the Court stated:

The Federal Arbitration Act provides:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This Court "will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." ***Russell,*** 826 So. 2d at 721-22(¶ 6) (citing ***IP Timberlands***, 726 So. 2d at 104 (¶ 29)).    This Court has endorsed the undisputed province of the Federal Arbitration Act, 9 U.S.C. § § 1-16 (FAA), and recognized

5

its clear authority to govern agreements formed in interstate commerce wherein a contractual provision provides for alternative dispute resolution. *IP Timberlands,* 726 So. 2d at 107.

¶12. This Court has held:

> In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." . . . The second prong considers "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims.

*Doleac*, 911 So. 2d at 501 (citing *Sullivan v. Mounger*, 882 So. 2d 129, 132 (Miss. 2004)).

¶13. In *Vicksburg Partners, L.P. v. Stevens*, 911 So. 2d 507, 514-15 (Miss. 2005), we stated:

> A threshold determination which must be considered is whether the parties' admission agreement falls within the provisions of § 2 of the Federal Arbitration Act. The FAA requires "that 'we rigorously enforce agreements to arbitrate.' " *East Ford*, 826 So. 2d at 713 (citing *Shearson/Am. Exp. Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L.Ed.2d 185 (1987)). Specifically, § 2 of the Federal Arbitration Act, relates to the enforceability of arbitration provisions . . . .
>
> In *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995), . . . the Supreme Court concluded that the phrase "involving commerce" is to be interpreted broadly and was the functional equivalent of the phrase "affecting commerce", which signals Congress' intent to exercise its Commerce Clause powers to the fullest extent. *Id.* at 273-74, 115 S. Ct. 834.
>
> In 2003, the U.S. Supreme Court once again sought to quantify the broad effect of the FAA as implemented through Congress' Commerce Clause power. In *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003), . . . the U.S. Supreme Court held that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question

would represent 'a general practice . . . subject to federal control.' " 539 U.S. at 56-57, 123 S. Ct. at 2040 (citing *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S. Ct. 996, 92 L. Ed. 1328 (1948)). *See also Perez v. United States*, 402 U.S. 146, 154, 91 S. Ct. 1357, 28 L. Ed. 2d 686 (1971); *Wickard v. Filburn*, 317 U.S. 111, 127-128, 63 S. Ct. 82, 87 L. Ed. 122 (1942).

This case clearly falls within the broad purview of the Federal Arbitration Act. Accordingly, singular agreements between care facilities and care patients, when taken in the aggregate, affect interstate commerce. As stated in *Alafabco*, "[o]nly the general practice need bear on interstate commerce in a substantial way." 539 U.S. at 57, 123 S. Ct. at 2040 (citing *Maryland v. Wirtz*, 392 U.S. 183, 196-97 n. 27, 88 S. Ct. 2017, 20 L. Ed. 2d 1020 (1968); *NLRB v. Jones & Laughlin Steel Corp*., 301 U.S. 1, 37-38, 57 S. Ct. 615, 81 L. Ed. 893 (1937)).

¶14. Here, as in *Vicksburg Partners*, the contract in the aggregate involves economic activity affecting interstate commerce. *Id.* at 515. Furthermore, the Borrowers are all resident citizens of Mississippi, and EquiFirst is a North Carolina corporation with its principal place of business in North Carolina. Therefore, we find the Federal Arbitration Act is applicable. *Id*.

## II.  WHETHER THE TRIAL COURT ERRED IN DENYING EQUIFIRST'S MOTION TO COMPEL ARBITRATION.

¶15. We have distinguished between procedural and substantive unconscionability. *East Ford*, 826 So. 2d at 714. In *East Ford*, this Court stated:

The courts have recognized "two types of unconscionability, procedural and substantive." *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp.2d 655 (S.D. Miss.2000) (quoting *York v. Georgia-Pac. Corp*., 585 F. Supp. 1265, 1278 (N.D. Miss.1984)). Procedural unconscionability may be proved by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power

7

of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." *Id.*

Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *York*, 585 F. Supp. at 1278. Substantively unconscionable clauses have been held to include waiver of choice of forum and waiver of certain remedies.

¶16. Here, the Borrowers' allegations fall into the category of procedural unconscionability. The substance of the Borrowers' claims made in the affidavits of Melvin Jackson and Brenda Manning are that they did not read the documents they signed at the loan closing, including the arbitration rider, to purchase their homes and they were told that they had to sign each document. The Borrowers admit in their affidavits they were told the "title/name" of each document and that one of the documents was called an arbitration rider. Their contention is that "no one told us we had the right to read any of the documents or to ask questions." However, nothing indicates that anyone prevented them from reading the documents or asking any questions.[1]

¶17. In ***McKenzie Check Advance of Mississippi, L.L.C. v. Hardy,*** 866 So. 2d 446, 455 (Miss. 2004), we stated:

> It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it. ***First Family Financial Services, Inc. v. Fairley,*** 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001). *See* ***Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co.***, 584 So. 2d 1254, 1257 (Miss. 1991). *See also* ***Koenig v. Calcote***,

---

[1] The Borrowers also argue that the attorney hired to handled the loan closing for EquiFirst, Fisher, had an obligation to explain the contracts to them. However, the Borrowers acknowledge Fisher was acting as agent for EquiFirst and that he was hired by EquiFirst.

199 Miss. 435, 25 So. 2d 763 (1946); *McCubbins v. Morgan*, 199 Miss. 153, 23 So. 2d 926 (1945).

¶18.     Jackson alleged in his affidavit that he had a twelfth grade education. Jackson contended that, despite his education level, he has difficulty reading. However, Jackson does not claim that he informed anyone at the loan closing that he had difficulty reading. Brenda Manning alleged in her affidavit that she felt hurried because the loan closing could not be rescheduled after 5:00 p.m. to accommodate her husband's work schedule. She stated that her husband did not get off work until 5:00 p.m. However, she stated they had approximately a week's notice of the loan closing date and time. Furthermore, her husband attended the loan closing.

¶19.     In *Northwest Fin. Miss., Inc. v. McDonald*, 905 So.2d 1187, 1194 (Miss. 2005), this Court addressed a similar situation where the borrowers claimed the lenders did not explain what arbitration was and did not tell the borrowers they were giving up their rights to a jury trial. The Court held:

> In *Washington Mutual Fin. Group, LLC v. Bailey*, 364 F.3d 260 (5th Cir. 2004), the court ruled that under Mississippi law, the inability of borrowers to read did not render them incapable of possessing adequate knowledge of the arbitration agreement they signed. *Id*. at 264-65. **The court also concluded that the trial court erred by finding the agreement unconscionable under Mississippi law because the lenders failed to specifically inform the plaintiffs that they were signing an arbitration agreement.** In the present case, each borrower signed a single-page arbitration agreement, written in plain language. None of the borrowers claimed to be unable to read. **There is no claim that the borrowers asked anyone to explain the process of arbitration or to explain what arbitration meant;** the borrowers simply state that no one informed them that they were signing an arbitration agreement, or told them what an arbitration agreement was. **Any reasonable person reading this document prior to signing it would expect to be subject to arbitration and would know that they were waiving their right to a jury**

9

**trial. There is also no evidence that a reasonable person would not sign this document in return for a desired loan**.

*Northwest*, 905 So. 2d at 1194 (emphasis added).

¶20.    As previously stated, the language clearly stated in bold typesetting above the signature line that by signing the arbitration rider they were waiving their right to litigate those claims and disputes in a court or jury trial or to participate as a representative or member of any class of claimants in connection with a claim or dispute. The provision further stated that other rights they would have if they went to court may also not be available in arbitration. Clearly, a review of the arbitration rider reveals it was conspicuous, and the language was not convoluted. In *Russell*, we held:

> The arbitration agreement in the Purchase Agreement is preceded by boldface and capitalized headings and was almost immediately succeeded by the signature line. **In Mississippi, a person is charged with knowing the contents of any document that he executes**. *J.R. Watkins Co. v. Runnels*, 252 Miss. 87, 96, 172 So. 2d 567, 571 (1965) ("**A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him**.").

826 So. 2d at 726 (emphasis added).

¶21.    Based on the analysis above, we find the trial court erred in denying EquiFirst's motion to compel arbitration under the arbitration rider signed by the Borrowers.

## CONCLUSION

¶22.    The trial court erred in denying EquiFirst's motion to compel arbitration. The transaction involved interstate commerce, and the Borrowers signed the arbitration agreement. The Federal Arbitration Act is applicable to the agreement between the parties. There was no

10

evidence presented that the Borrowers did not knowingly, intelligently, and voluntarily waive their constitutional right to a jury trial when they signed the arbitration agreement with EquiFirst. Therefore, the judgment of the Circuit Court of Leflore County is reversed, and this case is remanded to the trial court to compel arbitration.

¶23.     **REVERSED AND REMANDED.**

   **SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. COBB, P.J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**