# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01239-SCT

*MISSISSIPPI CARE CENTER OF GREENVILLE, LLC, OXFORD MANAGEMENT COMPANY, INC., MICHAEL OVERSTREET AND TESSA COOPER*

*v.*

*NANCY HINYUB, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DON WYSE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/21/2005 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | HEATHER MARIE ABY |
| | MARJORIE SELBY BUSCHING |
| | STEVEN MARK WANN |
| ATTORNEY FOR APPELLEE: | F. M. TURNER, III |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED AND REMANDED - 01/03/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    In this wrongful-death suit, Mississippi Care Center of Greenville, LLC; Oxford Management Company, Inc.; Michael Overstreet; and Tessa Cooper appeal to this Court after the trial court refused to compel arbitration.  Finding no error, we affirm the Washington County Circuit Court's order denying the defendants' motion to stay proceedings and compel arbitration.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     In January of 1997, Don Wyse was admitted to Mississippi Care Center of Greenville f/k/a MS Extended Care of Greenville (MCCG) under an admission agreement which did *not* contain an arbitration provision. This admission agreement was signed by Don Wyse and Wyse's daughter, Nancy Wyse (Hinyub),[1] who asserted that she was signing on behalf of her father pursuant to a durable power of attorney.[2]  On January 31, 2004, Don Wyse was discharged from MCCG and was transferred to Delta Regional Medical Center for treatment. On February 13, 2004, at approximately 6:30 p.m., Wyse was re-admitted to MCCG, and Hinyub, on behalf of her father, entered into a second admission agreement with MCCG. This second admission agreement contained an arbitration provision.  Wyse died at noon the next day.

¶3.     On August 24, 2004, Nancy Hinyub, individually and as personal representative of the estate of Don Wyse, deceased, filed an action in the Circuit Court of Washington County against MCCG; Oxford Management Company, Inc.; Health Care Consultants, Inc.; Mississippi Extended Care of Greenville, Inc.; Michael H. Overstreet; Tessi Cooper; Unidentified Entities 1 through 10 and John Does 1 through 10 (as to MCCG) alleging, *inter alia*, negligence, malpractice, malice and/or gross negligence, fraud, breach of fiduciary duty,

---

[1]Nancy Wyse has since married and her legal name is now Nancy Hinyub.

[2]The official record before this Court is devoid of a durable power of attorney executed by Don Wyse in favor of Nancy Hinyub.  This fact will be discussed in more detail, *infra*.

2

and wrongful death. On August 30, 2004, Hinyub filed an amended complaint to substitute John Does 1-2 with Nino A. Bologna, M.D. and Phillip Doolittle, M.D., two of Wyse's treating physicians. On December 16, 2004, MCCG, Overstreet and Cooper filed a Motion to Stay Proceedings and Compel Arbitration based on the arbitration provision contained within the Admissions Agreement of February 13, 2004. On December 22, 2004, Oxford Management Company, Inc., filed its Motion for Joinder in the Defendants' Motion to Stay Proceedings and Compel Arbitration. Hinyub filed her opposition to the defendants' motion to compel arbitration on April 21, 2005. After reviewing the motions submitted by the parties, on June 3, 2005, the Circuit Court of Washington County, Judge Richard A. Smith, presiding, entered its Order Denying the Defendants' Motion to Stay Proceedings and Compel Arbitration. From this order, certain defendants[3] appeal to this Court on the sole issue of whether the trial court erred in failing to enforce an arbitration provision contained

---

[3]There is no Rule 54(b) certification from the trial judge in this case. *See* Miss. R. Civ. P. 54(b). In the original Complaint, there were seven named defendants as well as Unidentified Entities 1 through 10 and John Does 1 through 10. In the later filed Amended Complaint, Dr. Nino A. Bologna and Dr. Phillip Doolittle were added as named defendants. The defendants who filed the motion to compel arbitration were MCCG, Michael H. Overstreet, and Tessi Cooper; however, by separate motion, Oxford Management Company, Inc., joined this motion to compel arbitration. Separate motions to dismiss were filed by Dr. Bologna and Dr. Doolittle; however, the record reveals that the trial court ruled only on Dr. Bologna's motion to dismiss by way of an order denying the motion to dismiss. Thus, the defendants who are not parties to this appeal are Health Care Consultants, Inc., Health Services of Mississippi, Inc., Mississippi Extended Care of Greenville, Inc., Dr. Nino A. Bologna, and Dr. Phillip Doolittle. Since the sole issue on appeal is whether certain defendants are entitled to the enforcement of an arbitration provision, and since today's appeal is being resolved by way of a remand to the trial court for a final disposition on the merits as to all defendants, the lack of a Rule 54(b) certification is of no moment.

within a nursing home admission agreement entered into between the nursing home and the resident's daughter (Nancy Hinyub), operating under a power of attorney and as her father's responsible party. Finding that the trial court properly denied the defendants' motion to compel arbitration, we affirm.

## DISCUSSION

### WHETHER THE CIRCUIT COURT ERRED IN DENYING THE DEFENDANTS' MOTION TO COMPEL ARBITRATION.

¶4. On appeal, we apply a *de novo* standard of review to a trial court's decision to grant or deny a motion to compel arbitration. *Equifirst Corp. v. Jackson*, 920 So. 2d 458, 461 (Miss. 2006); *Doleac v. Real Estate Professionals, LLC*, 911 So. 2d 496, 501 (Miss. 2005); *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002). The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*., applies to all written agreements to arbitrate contained in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2.

¶5. Courts have long recognized the existence of "a liberal federal policy favoring arbitration agreements." *Equifirst Corp.*, 920 So. 2d 461 (citing *Terminix Int'l, Inc., Ltd. P'ship v. Rice*, 904 So. 2d 1051, 1054-55 (Miss. 2004) (quoting *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 722 (Miss. 2002))). As such, "[a]rbitration is firmly embedded in both our federal and state laws." *Equifirst Corp.*, 920 So. 2d at 461 (citing *Pass Termite & Pest Control, Inc. v. Walker*, 904 So. 2d 1030, 1032-33 (Miss. 2004) (citing *Russell*, 826 So. 2d 719 (Miss. 2002); *East Ford*, 826 So. 2d 709 (Miss. 2002); *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96 (Miss. 1998))).

4

¶6.    Therefore, arbitration is required "unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *McKenzie Check Advance of Miss. v. Hardy*, 866 So. 2d 446, 450 (Miss. 2004); 9 U.S.C. § 2.  That being said, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Equifirst Corp.*, 920 So. 2d at 461 (citing *Pre-Paid Legal Services, Inc. v. Battle*, 873 So. 2d 79, 83 (Miss. 2004) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 106 S. Ct. 1415, 1418, 89 L. Ed. 2d. 648 (1986))).

¶7.    The defendants argue on appeal that they should be allowed to arbitrate the claims asserted by Nancy Hinyub, individually and as personal representative of the estate of Don Wyse.  In support of their argument, the defendants contend Hinyub had authority to bind her father, Don Wyse, in health care matters, including the agreement to arbitrate. The defendants thus assert that, based on Hinyub's authority to bind her father to the arbitration provision, Hinyub gave the mutual assent of her father and herself to the arbitration provision when she signed directly below the arbitration provision, which provided in relevant part:

> **The parties understand and agree that by entering this Arbitration Agreement they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and jury.**
>
> The Resident and/or Responsible Party understand that (1) he/she has the right to seek legal counsel concerning this agreement, (2) the execution of this Arbitration (sic) is not a precondition to the furnishing of services to the Resident by the Facility; and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within 30 days of signature.

5

If not rescinded within 30 days, this Arbitration Agreement shall remain in effect for all care and services subsequently rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility.

¶8.     Hinyub argues on the other hand that no arbitration agreement existed between Don Wyse and MCCG because the claims asserted in the complaint are not covered by the arbitration agreement; Hinyub did not have authority to bind her father to an arbitration agreement, either pursuant to a durable power of attorney for health care or as a health care surrogate under the Uniform Health-Care Surrogate Statute, Miss. Code Ann. § 41-41-211 (Rev. 2005); and the arbitration agreement was substantively unconscionable.

¶9.     This Court unquestionably has recognized the well-accepted standard for determining the validity and enforceablility of an arbitration clause.  Specifically,

> In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry.  The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement.
> . . .
>
> Under the second prong, the United States Supreme Court has stated the question is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims."

*Pre-Paid Legal Services, Inc. v. Battle*, 873 So. 2d 79, 82-83 (Miss. 2004) (citing *East Ford, Inc.*, 826 So. 2d at 713).  *See Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).  Based on the above standard, MCCG states "[i]n this case *sub judice*, a valid written agreement to arbitrate exists between Don Wyse and Mississippi Care Center of Greenville."  However, nowhere in the motion did

6

MCCG assert that a valid arbitration agreement existed because Hinyub had a durable power of attorney or any authority to act on behalf of Wyse to sign the admission agreement.

¶10.    Thus, this Court must first determine whether the parties agreed to arbitrate the dispute. *Rogers-Dabbs Chevrolet-Hummer v. Blakeney*, 950 So. 2d 170, 173 (Miss. 2007). To determine whether the parties in this case agreed to arbitrate the dispute, we consider the already-noted, two-prong test of whether there is a valid arbitration agreement, and whether the parties' dispute is within the scope of the arbitration agreement. *Id.* (citing *East Ford*, 826 So. 2d at 713). In determining whether Wyse and Hinyub agreed to arbitration, we simply apply contract law. *See Terminix Int'l, Inc., Ltd. P'ship v. Rice*, 904 So. 2d 1051, 1055 (Miss. 2004); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). That being said, it is important to note that, while Wyse did not himself sign the arbitration agreement, Hinyub's signature may have bound Wyse if Hinyub had the authority to sign the document.

¶11.    In *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 266 (5th Cir. 2004), a plaintiff insisted she could not be bound by the arbitration provision contained within a contract signed solely by her husband. However, the court found that she was bound by the arbitration provision and stated:

> It does not follow . . . that under the [Federal Arbitration] Act an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision. [We have made] clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency.

(quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995)). *See also Terminix*, 904 So. 2d at 1058 (wife bound by arbitration clause in contract signed by her husband, although she did not sign the contract). So this Court must determine whether Hinyub had authority to sign the nursing home's admission agreement and arbitration agreement on behalf of Wyse.

¶12.   MCCG argues that Wyse executed a power of attorney in favor of Hinyub on June 1, 1996, and that this power of attorney empowered Hinyub with full authority to act on his behalf with regard to health-care decisions. "Generally speaking, our law regards as valid and enforceable as a power of attorney any written instrument signed by the principal and 'expressing plainly the authority conferred.'" *Kountouris v. Varvaris*, 476 So. 2d 599, 603 (Miss. 1985) (quoting Miss. Code Ann. § 87-3-7 (Rev. 1999)). However, the durable power of attorney to which the parties refer is not a part of the official record before this Court. The defendants concede this fact in their brief when they state that "[s]aid power of attorney was submitted to the [trial court] as part of the April 26, 2005 hearing. However it does not appear in the record." It was not until the end of the hearing that the parties and the trial court focused on the power of attorney. The transcript of the April 26, 2005, hearing (in which the official court reporter certified that no exhibits were offered and received into evidence) reveals the following:

> BY [DEFENDANTS' ATTORNEY]: One thing that was not brought out, and may I approach, Your Honor?
>
> BY THE COURT: Yes.

8

BY [DEFENDANTS' ATTORNEY]: In order to clear up whether or not she can bind –

BY [PLAINTIFFS' ATTORNEY]: What are you looking at?

BY [DEFENDANTS' ATTORNEY]: The power of attorney. Do you have a copy?

BY [PLAINTIFFS' ATTORNEY]: I haven't seen it.

BY [DEFENDANTS' ATTORNEY]: Ms. Hinyub executed a power of attorney for healthcare the year before her dad went into the facility, and I know I've got another one.

BY [PLAINTIFFS' ATTORNEY]: That's okay. You can give him [the trial judge] this one. I've read it.

BY [DEFENDANTS' ATTORNEY]: In their brief, they repeatedly pointed out unless there was a power of attorney, she has no authority as an agent to bind Mr. Wyse, or any of the estate, or wrongful death beneficiaries, where clearly she had the authority since 1996 to do so, and, in fact, she did admit him as his agent for power of attorney for healthcare decisions.

¶13. This power of attorney was not offered into evidence as an exhibit, nor was it designated as part of the record for this appeal. Instead, there are only references to its existence in the briefs, and Hinyub attached an unauthenticated copy of the durable power of attorney in her brief.[4] "This Court is limited to consideration of the facts in the record, while reliance on facts only disclosed in the briefs is prohibited." *Greater Canton Ford Mercury, Inc. v. Clark*, 948 So. 2d 417, 423 (Miss. 2007) (citing *Atlantic Horse Ins. Co. v. Nero*, 108 Miss. 321, 329, 66 So. 780 (1914)). Without a durable power of attorney

---

[4]It is interesting to note that it was the plaintiff-appellee, Nancy Hinyub, who attached an unauthenticated copy in her brief, and not the defendants-appellants, who would have been the ones who would want us to look at the power of attorney.

contained within the record, this Court is constrained as a matter of law to find that Nancy Hinyub did not have authority to bind her father, Don Wyse, according to such power of attorney, by causing the claims to be submitted to arbitration pursuant to the arbitration agreement within the second admissions agreement executed by Hinyub within hours of her father's death.

¶14.    We now look at MCCG's second assertion that Hinyub had authority to bind Wyse as Wyse's health care surrogate under the Uniform Health Care Surrogate Statute, Miss. Code Ann. § 41-41-211 (Rev. 2005).  This statute states in pertinent part:

> (1) A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.
>
> (2) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health-care provider.  In absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate:
>
> > (a) The spouse, unless legally separated;
> >
> > (b) An adult child;
> >
> > (c) A parent; or
> >
> > (d) An adult brother or sister.
>
> (6) A surrogate shall make a health-care decision in accordance with the patient's individual instructions, if any, and other wishes to the extent known to the surrogate.  Otherwise, the surrogate shall make the decision in accordance with the surrogate's determination of the patient's best interest.  In determining the patient's best interest, the surrogate shall consider the patient's personal values to the extent known to the surrogate.

10

¶15.   Again, the record is devoid of information to properly determine if Hinyub could act as Wyse's health care surrogate.  According to the statute, Wyse's primary physician would first have to determine that Don Wyse lacked capacity to make his own health care decisions. "Capacity" is defined in Miss. Code Ann. § 41-41-203 (d) as "an individual's ability to understand the significant benefits, risks, and alternatives to proposed health care and to make and communicate a health care decision."  No such evidence is contained in the record before us.  Neither party presents a declaration by Wyse's primary physician stating that Wyse was incapable of managing his affairs prior to Hinyub's signing the admissions agreement with the arbitration agreement.

¶16.   Additionally, under the Act, the authority of a health-care surrogate is limited to making "health-care decisions."  According to Miss. Code Ann. § 41-41-203 (h):

> "Health care decision" means a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including:
>
> > (i) Selection and discharge of health-care providers and institutions;
> > (ii) Approval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not to resuscitate; and
> > (iii) Directions to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care."

Miss. Code Ann. § 41-41-211 (Rev. 2005).

While in both *Covenant Health Rehab of Picayune v. Brown*, 949 So. 2d 732 (Miss. 2007) and *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507 (Miss. 2005), this Court found that execution of the arbitration provision as part of the admissions agreement was part of

11

the "health-care decision," the arbitration provision was an essential part of the consideration for the receipt of "health care" in those instances. On the other hand, in today's case, Hinyub was not required to sign the arbitration provision to admit Don Wyse to the Mississippi Care Center of Greenville. In fact, the admissions agreement clearly stated:

> The Resident and/or Responsible Party understand[s] that (1) he/she has the right to seek legal counsel concerning this agreement, (2) the execution of this Arbitration is not a precondition to the furnishing of services to the Resident by the Facility; and (3) this Arbitration Agreement may be rescinded by written notice to the Facility from the Resident within 30 days of signature. If not rescinded within 30 days, this Arbitration Agreement shall remain in effect for all care and services subsequently rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility.

¶17. Since signing the arbitration provision was not a part of the consideration necessary for Wyse's admission to MCCG and not necessarily in the best interest of Wyse as required by the Act, Hinyub did not have the authority as Wyse's health care surrogate to enter into the arbitration provision contained within the admissions agreement.

¶18. Because Hinyub lacked authority to enter into the arbitration provision within the admission agreement, the arbitration agreement is invalid. Therefore, Hinyub is not required to arbitrate her claims against MCCG. The first prong of the two-prong test outlined in *East Ford* has not been met. 826 So. 2d at 713. Thus, it is unnecessary for this Court to address the remaining issues raised on appeal.

## CONCLUSION

¶19.    For the reasons stated, the Washington County Circuit Court's order denying the defendants' motion to compel arbitration is affirmed and this case is remanded to the Circuit Court of Washington County for further proceedings consistent with this opinion.

¶20.    **AFFIRMED AND REMANDED**.

 **SMITH, C.J., WALLER, P.J., EASLEY, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.  DIAZ, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY.**