995 So.2d 775 (2008)
FOREST HILL NURSING CENTER, INC., Long Term Care Management, LLC, Hugh Franklin, Scott A. Lindsey and Rhonda Bounds, Appellants,
v.
Mary Louise McFARLAN and Patricia Mathews, Appellees.
No. 2007-CA-00327-COA.
Court of Appeals of Mississippi.
April 1, 2008.
Rehearing Denied September 23, 2008.
*778 Steven Mark Wann, Paul Hobart Kimble, Jackson, Heather Marie Aby, attorneys for appellants.
Susan Nichols Estes, Douglas Bryant Chaffin, Kenneth L. Connor, attorneys for appellees.
Before MYERS, P.J., IRVING, GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶1. Mary Louise McFarlan filed suit against Forest Hill Nursing Center ("Forest Hill") based on alleged personal injuries that she sustained while a resident at Forest Hill. In response to her complaint, defendants filed a motion to compel arbitration which was denied by the circuit court. Forest Hill now appeals arguing that the court should have compelled arbitration according to the agreement between the parties. We find the denial of the motion to compel arbitration to be in error. We reverse and remand for further proceedings consistent with this opinion.

*779 FACTS
¶2. Mary Louise McFarlan was admitted to Forest Hill in Jackson on July 28, 2003. McFarlan's granddaughter, Patricia Mathews, signed the admission paperwork as McFarlan's "responsible party." The admission agreement, signed by Mathews, included section E entitled "ARBITRATIONPLEASE READ CAREFULLY." Mathews also initialed this specific section regarding arbitration. McFarlan did not sign any part of the agreement.
¶3. McFarlan filed suit on August 25, 2004, alleging that Forest Hill was responsible for personal injuries she sustained while a resident at Forest Hill. Forest Hill filed a motion to dismiss or, in the alternative, a motion to compel arbitration. The circuit court refused to compel arbitration finding that Mathews's authority was limited to the areas of health care and business affairs which do not include the ability to bind McFarlan to an arbitration agreement.

STANDARD OF REVIEW
¶4. We apply a de novo standard of review to the denial of a motion to compel arbitration because the motion presents a question of law as to whether the circuit court has jurisdiction to hear the underlying matter. Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 513(¶9) (Miss.2005). The Federal Arbitration Act ("FAA") governs contracts "evidencing a transaction involving commerce" which include nursing home admission agreements. Id. at 514-15 (¶¶13, 16-18) (quoting 9 U.S.C. § 2 (2000)). Therefore, we must apply the policy of the FAA to "rigorously enforce agreements to arbitrate." East Ford, Inc. v. Taylor, 826 So.2d 709, 713(¶11) (Miss.2002) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).
¶5. "In determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." Id. at 713(¶9). The second prong of the inquiry is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." Id. at 713(¶10) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Further, "only generally applicable contract defenses, such as fraud, duress, or unconscionability, can be used to invalidate arbitration provisions or agreements" governed by the FAA. Stephens, 911 So.2d at 514(¶11).

ANALYSIS

1. Whether a valid arbitration agreement exists between the parties.
¶6. Forest Hill argues that the arbitration clause contained in the admission agreement is valid because: (1) Mathews had the authority to bind McFarlan to the agreement as her health-care surrogate under Mississippi Code Annotated section 41-41-211 (Rev.2005), (2) Mathews had the authority to bind McFarlan to the agreement under the principles of agency, (3) McFarlan was a third-party beneficiary to the agreement between Mathews and Forest Hill, and (4) the agreement is not unconscionable.

a. Uniform Health-Care Decisions Act
¶7. First, Forest Hill contends that Mathews's signature on the admission agreement bound McFarlan to the arbitration clause because Mathews was acting as McFarlan's health-care surrogate under *780 the Uniform Health-Care Decisions Act. Miss.Code Ann. §§ 41-41-201 through 229 (Rev.2005). The Act provides that "[a] surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available." Miss.Code Ann. § 41-41-211(1) (Rev.2005) (emphasis added). The circuit court found that waiving a person's right to a jury trial by signing an arbitration agreement is not included in the purview of health-care decisions which the statute authorizes a surrogate to make. However, it is unnecessary for us to reach that issue here because the statute is inapplicable to this case.
¶8. "The Uniform Healthcare Decisions Act does not apply to those persons who are competent." Grenada Living Ctr., LLC v. Coleman, 961 So.2d 33, 38(¶18) (Miss.2007). It is clear from the language of the statute that a surrogate may make health-care decisions for a patient only after the patient is found to be incapacitated by a physician. See Miss. Code Ann. § 41-41-211(1). There is no evidence in the record that McFarlan was incapacitated at the time that the admission agreement was signed. Forest Hill argues that the assessment form completed when McFarlan was admitted shows that she was moderately impaired, had problems with her memory, had periods of altered perception and was unable to maintain basic hygiene without assistance. However, this intake form does not meet the statutory requirement that a physician determine that she was incapacitated at the time of her admission. Because there is insufficient proof that she was incapacitated within the meaning of section 41-41-211(1), Mathews did not have the authority to act as her health-care surrogate.
¶9. Our finding is consistent with the supreme court's decision in Covenant Health Rehab of Picayune, L.P. v. Brown, 949 So.2d 732 (Miss.2007). In Brown, the court held that a surrogate had the authority to bind Brown to agreements concerning matters of health-care, but only after Brown's "admitting physician at the hospital found that she did not have the mental capacity to manage her affairs." Id. at 737(¶10). Brown's physician determined that she was incapacitated; thus, she was legally capable of having her health-care decisions made by a surrogate. Id.
¶10. Because there is no evidence that a physician found McFarlan to be incapacitated, we hold that Mathews did not have the authority to bind McFarlan to the admission agreement as her health-care surrogate. Accordingly, this issue has no merit.
¶11. We note that the dissent relies on the recent supreme court decision in Mississippi Care Center of Greenville, LLC v. Hinyub, 975 So.2d 211 (¶¶16-17) (Miss. 2008) for the proposition that the execution of an arbitration agreement is considered a health-care decision, within the authority of a health-care surrogate, only when that arbitration provision is required for admission to the nursing home. However, the supreme court's ruling in Hinyub is not at odds with our decision in this case. In fact, in Hinyub, the court similarly found that there was no evidence of the patient's incapacity as required by the health-care surrogate statute. Id. at (¶15). The supreme court held exactly as we do here-the party who entered into the admissions agreement with the nursing home did not have the authority to bind the patient to the arbitration agreement as a healthcare surrogate under the Uniform Health-Care *781 Decisions Act.[1]Id. at (¶¶ 15, 17).

b. Agency Principles
¶12. Forest Hill next argues that Mathews had the authority to enter into the arbitration agreement on McFarlan's behalf under the principles of agency law. First, it argues that Mathews's signing the contract as McFarlan's responsible party created an express agency or, alternatively, an implied agency relationship. Second, Forest Hill argues that Mathews possessed the apparent authority to bind McFarlan to the agreement.
¶13. "The burden of proving an agency relationship rests squarely upon the party asserting it." Highlands Ins. Co. v. McLaughlin, 387 So.2d 118, 120 (Miss.1980). It is clear that Forest Hill has not shown that Mathews had an express agency relationship with McFarlan. "An express agent is one who is `in fact authorized by the principal to act on their behalf.'" McFarland v. Entergy Miss., Inc., 919 So.2d 894, 902(¶25) (Miss.2005) (quoting Cooley v. Brawner, 881 So.2d 300, 302(¶10) (Miss.2004)). There is no evidence in the record that any type of agreement existed between McFarlan and Mathews that would give Mathews the authorization to act on McFarlan's behalf.
¶14. Similarly, there is no evidence to show that an implied agency relationship existed. Implied agency requires that the principal give the agent actual authorization to perform acts which reasonably lead third parties to believe that an agency relationship exists. Capital Associates, Inc. v. Sally Southland, Inc., 529 So.2d 640, 644 (Miss.1988). The existence of an implied agency is proved by "facts and circumstances of the particular case, including words and conduct of the parties." 3 Am.Jur.2d Agency § 16 (2004). The focus is on "whether the agent reasonably believes, because of the principal's conduct, that the principal desired the agent so to act." Id. at § 72. Forest Hill offers no evidence of any words or conduct on the part of McFarlan to imply that Mathews was her agent or had any authority to act on her behalf by signing the admissions agreement. Its argument is solely based on the actions of Mathews alone which are insufficient to show an implied agency relationship.
¶15. Finally, there is insufficient evidence to prove that Mathews had apparent authority to bind McFarlan to the arbitration agreement. Forest Hill specifically argues that Mathews had apparent authority because "by signing the admission agreement as McFarlan's Responsible Party, Mathews held herself out generally and specifically to have the authority to bind McFarlan and to engaged the services of Forest Hill." However, "[a]pparent authority of an agent only binds the principal when the plaintiff can show `acts or conduct of principal indicating agent's authority, reasonable reliance upon those acts by third person, and detrimental change in position by third person as result of that reliance.'" McFarland, 919 So.2d at 902(¶26) (quoting Eaton v. Porter, 645 So.2d 1323, 1325 (Miss.1994) (emphasis added)).
¶16. Here, Forest Hill argues only that Mathews held herself out as an agent of McFarlan. There is no proof of any action taken by McFarlan, as principal, to show that an agency relationship existed when Mathews signed the agreement. Therefore, *782 no evidence of apparent authority is shown here because the acts or conduct indicating the authority of the agent must be made by the principal. See Eaton, 645 So.2d at 1325. Mathews is the only person who signed the admission agreement. In fact, McFarlan was not present at the time of the signing. Because there is no evidence of any actions on the part of McFarlan, Mathews did not have apparent authority to bind McFarlan to the agreement.
¶17. There is no indication in the record that Mathews had the authority under the principles of agency to bind McFarlan to the admissions agreement. Thus, this issue has no merit.

c. Third-party Beneficiary
¶18. Forest Hill further argues that McFarlan received the benefits and services flowing from the admission agreement but now seeks to avoid the burdens of the contract thereby disregarding equity and contravening the purposes underlying the FAA. See Miss. Fleet Card, L.L.C. v. Bilstat, Inc., 175 F.Supp.2d 894, 903 (S.D.Miss.2001). In response, McFarlan contends that no contract exists between Mathews and Forest Hill; thus, the third-party beneficiary theory is inapplicable. However, McFarlan offers no legal or factual basis for this proposition. The admission agreement was signed by both Mathews and a representative of Forest Hill. Based on the record, we have no reason to conclude that anything other than a valid contract exists between Mathews and Forest Hill. Thus, we will consider whether McFarlan is a third-party beneficiary of that agreement.
¶19. While it is generally true that a party may not be forced to arbitrate a claim unless the party has agreed to do so, the supreme court has recognized the exception that "arbitration agreements can be enforced against non-signatories if such non-signatory is a third-party beneficiary." Adams v. Greenpoint Credit, LLC, 943 So.2d 703, 708 (¶¶14-15) (Miss.2006) (citing Smith Barney, Inc. v. Henry, 775 So.2d 722, 727 (¶¶18-20) (Miss.2001)). Consequently, if McFarlan is a third-party beneficiary, she is bound by the arbitration agreement contained in the admission agreement.
¶20. The supreme court ruled on the issue of third-party beneficiaries in Adams v. Greenpoint Credit, LLC, 943 So.2d 703 (Miss.2006). There, the court considered whether Beth Brown was a third-party beneficiary to a contract between Bank-America Housing Services and Brown's father, Eddie Adams. The contract was later assigned to Greenpoint who Brown sued based on a unauthorized draft on her account. Greenpoint moved to compel arbitration; however, the court held that Brown was not a third-party beneficiary and she could not be forced to arbitrate her claim. Id. at 708 (¶15).
¶21. In so holding, the court set forth factors to consider to determine whether someone is a third-party beneficiary.

[T]he contracts between the original parties must have been entered for his benefit, or at least such benefit must be the direct result of the performance within the contemplation of the parties as shown by its terms. There must have been a legal obligation or duty on the part of the promisee to such third person beneficiary. The obligation must have been a legal duty which connects the beneficiary with the contract. In other words, the right of the third party beneficiary to maintain an action on the contract must spring from the terms of the contract itself. 17A C.J.S. Contracts 519(4) (1963).
Id. at 708-09(¶15) (quoting Burns v. Wash. Sav., 251 Miss. 789, 796, 171 So.2d *783 322, 325 (1965)). We must look to see if it was the clear intent of the parties to create a third-party beneficiary. Id.
¶22. Looking at these factors, the court determined that Brown was not a third-party beneficiary. Nothing in the language of the contract indicated that she was intended as a beneficiary, she did not sign the contract, she received no benefits from the contract, and her right to bring suit did not spring from the terms of the contract itself. She was "effectively a stranger to the contract." Id.
¶23. The outcome is clearly different when we apply these factors to the agreement between Forest Hill and Mathews. Although McFarlan did not sign the admission agreement, many other factors indicate that she is a third-party beneficiary to the agreement. She is named at the top of the agreement as the resident to be admitted to Forest Hill. The plain language of the contract refers numerous time to benefits and responsibilities of both the resident and the responsible party. The benefits of residing at Forest Hill flow directly to McFarlan as a result of the agreement. By the terms of the contract, Forest Hill incurred a legal duty to care for McFarlan and provide services directly to her including "room, board, linens and bedding, nursing care, and certain personal services."
¶24. McFarlan's care was not incidental to the contract, but instead was the essential purpose of the agreement. We find that she is an intended third-party beneficiary of the agreement between Forest Hill and Mathews; thus, she is bound by the terms of the contract, including the agreement to arbitrate any legal disputes related to the contract.
¶25. We note that McFarlan also argues that the supreme court's decision in Grenada Living Ctr., LLC v. Coleman, 961 So.2d 33 (Miss.2007), prohibits us from holding that she is bound by the arbitration agreement. However, that case is distinguishable from the present matter. In Coleman, the court specifically held that the case "does not stand for the proposition that non-signatories to a contract containing an arbitration clause can never be bound by arbitration." 961 So.2d at 38(¶17). There, the trial court specifically made a finding that no one had the authority to speak for Coleman except himself. That finding was not made here; therefore, we will continue to follow binding precedent that non-signatories may be bound by an arbitration agreement if they are determined to be a third-party beneficiary. See id. at 38 (¶¶16-17) (citing Henry, 775 So.2d at 727(¶20); Terminix Int'l, Inc. v. Rice, 904 So.2d 1051, 1058(¶29) (Miss.2004)).

2. Whether the parties' dispute is within the scope of the arbitration agreement.
¶26. McFarlan argues that her complaint does not assert a claim arising under the admission agreement. However, after reviewing the record, we do not find this argument convincing. The arbitration clause in the admission agreement states that the parties agree that "any legal dispute, controversy, demand or claim ... that arises out of or relates to the Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration pursuant to the Federal Arbitration Act...." Each of McFarlan's claims arise out of circumstances related to her care while a resident at Forest Hill.
¶27. McFarlan further argues that her claims do not fall under the arbitration agreement by its own terms. The arbitration clause incorporates the rules and procedures of the American Health *784 Lawyers Association which state that cases with pre-dispute arbitration agreements cannot be arbitrated. However, this issue was never brought before the circuit court and we refuse to review issues raised for the first time on appeal. Tate v. State, 912 So.2d 919, 928(¶27) (Miss.2005); Cleveland v. Mann, 942 So.2d 108, 116(¶24) (Miss.2006).
¶28. We find that the dispute between the parties certainly arises out of the relationship between resident and facility created by the admission agreement and consequently falls within the scope of the arbitration clause.

3. Unconscionability
¶29. Having found that McFarlan is bound by the arbitration agreement, we now turn to the second prong of East Ford to see if any general contract defenses exist to invalidate the agreement itself. East Ford, 826 So.2d at 713(¶9). McFarlan argues that she should be allowed to conduct discovery related to the enforceability of the arbitration clause in order to determine whether the clause is unconscionable. However, as Forest Hill correctly argues, neither the supreme court nor this Court has determined that such discovery is necessary before an analysis of unconscionability may be conducted. See Brown, 949 So.2d at 736-41 (¶¶9-25); Mann, 942 So.2d at 113-17 (¶¶14-33); Stephens, 911 So.2d at 516-25 (¶¶20-48); East Ford, 826 So.2d at 713-17 (¶¶11-22); Cmty. Care Ctr. v. Mason, 966 So.2d 220, 229-31 (¶¶23-33) (Miss.Ct.App.2007). Likewise, we find that no further discovery on this issue is needed and now turn to whether the arbitration clause is unconscionable.
¶30. Unconscionability is defined as "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." East Ford, 826 So.2d at 715(¶17) (citations omitted). There are two types of unconscionability-procedural and substantive.

a. Procedural Unconscionability
¶31. Procedural unconscionability exists when there is "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms." Id. at 714(¶13) (quoting Pridgen v. Green Tree Fin. Servicing Corp., 88 F.Supp.2d 655, 657 (S.D.Miss.2000)). We must look beyond the actual terms of the agreement and focus on the circumstances surrounding the overall formation of the contract. Stephens, 911 So.2d at 517 (¶¶23-24).
¶32. In Stephens, the supreme court reviewed the circumstances surrounding the signing of a nursing home admission agreement which contained an arbitration clause. The court held that a contract of adhesion is not unconscionable per se. It is essential that the evidence show a "lack of knowledge or voluntariness by the weaker party." Id. at 520(¶32). In concluding that the contract was not procedurally unconscionable, the court noted the following facts:
there were no circumstances of exigency; the arbitration agreement appeared on the last page of a six-page agreement and was easily identifiable as it followed a clearly marked heading printed in all caps and bold-faced type clearly indicating that section "F" was about "Arbitration;" the provision itself was printed in bold-faced type of equal size or greater than the print contained in the rest of the document; and, appearing between the arbitration clause and the signature lines was an all caps bold-faced consent *785 paragraph drawing special attention to the parties' voluntary consent to the arbitration provision contained in the admissions agreement.
Id. at (¶33). Under those facts, the court held that there was no evidence of a lack of knowledge or voluntariness on the part of the weaker party. Instead, the parties were "competent individuals signing a well-marked, highly visible agreement which indicated very clearly that dispute resolution would be accomplished by way of arbitration." Id.
¶33. The facts in this case closely resemble those in Stephens. The arbitration clause is found in section "E" on page five of an eight-page document. The section heading is in bold-faced type and reads "ARBITRATIONPLEASE READ CAREFULLY." This was the only section in the agreement that Mathews was required to initial. The wording of the document is not presented in complex legalistic language. A paragraph written in bold-faced letters draws attention to the fact that the parties are giving up their constitutional right to have a claim decided before a judge and jury. The agreement also states that the party has a right to seek legal counsel, the signing of the agreement is not a precondition to admission, and the contract may be rescinded within thirty days.
¶34. There is no evidence in the record to show that any exigent circumstances surrounded Mathews' signing of the admission agreement. Because of the foregoing reasons, we find that the agreement is not procedurally unconscionable.

b. Substantive Unconscionability
¶35. Substantive unconscionability exists when the arbitration agreement is found to be oppressive. East Ford, 826 So.2d at 714(¶14). "When reviewing a contract for substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, contracting parties." Stephens, 911 So.2d at 521(¶35). The language of the contract must greatly alter the legal rights of the parties or severely limit the damages available. Id. at (¶38).
¶36. We find that the arbitration clause in McFarlan's admission agreement neither significantly alters her legal rights or severely limits the damages available to her. Instead, it "merely provides for a mutually agreed-upon forum for the parties to litigate their claims and is benign in its effect on the parties' ability to pursue potential actions." Id. at 522(¶39). It contains none of the language previously held unconscionable by Mississippi courts. There is no required grievance resolution process, no limit on the amount of damages, no waiver of punitive damages, and no requirement to compensate Forest Hill's staff for their involvement in a dispute. See id. at 522-24 (¶¶39-43); Brown, 949 So.2d at 737-741 (¶¶14-25). Accordingly, we find that the arbitration agreement is not substantively unconscionable.
¶37. The East Ford test to determine whether an arbitration agreement is valid has been satisfied in this case. A valid contract exists between McFarlan and Forest Hill through her status as a third-party beneficiary, the dispute between the parties falls within the scope of the arbitration agreement, and no general contract defenses exist to invalidate the agreement. Therefore, we reverse and remand with directions for the trial court to order arbitration in accordance with this opinion.
¶38. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS *786 REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. LEE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, P.J.
LEE, P.J., Concurring in Part, Dissenting in Part:
¶39. I must respectfully dissent. I cannot agree that McFarlan was bound to arbitration under the theory that she was a third-party beneficiary to the nursing home contract when no evidence was presented that she was incompetent, incapacitated, or otherwise unable to sign the contract herself.
¶40. McFarlan cannot be bound as a third-party beneficiary to arbitration because there was never a binding arbitration agreement. Mathews, McFarlan's granddaughter who signed the agreement, did not have power of attorney and was not her conservator. McFarlan was never deemed incompetent, and no evidence was presented that McFarlan ever saw the contract that is now being enforced against her and her wrongful death beneficiaries.
¶41. Since McFarlan was not shown to be incompetent or incapacitated and Mathews did not have power of attorney, Mathews only had the authority to make health-care related decisions for McFarlan under Mississippi Code Annotated section 41-41-211(2) (Rev.2005). Mississippi Code Annotated section 41-41-203(h) (Rev.2005) defines a health-care decision as:
a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including: (i) selection and discharge of health-care providers and institutions; (ii)[a]pproval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not to resuscitate; and (iii)[d]irections to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care.
¶42. The decision to arbitrate is neither explicitly authorized nor implied within section 41-41-203(h). However, in the recent case of Mississippi Care Center of Greenville, LLC v. Hinyub, 2005-CA-01239-SCT (¶¶16-17) (Miss. Jan. 3, 2008)[2], the supreme court found that the execution of an arbitration provision, when it is an essential part of the admissions agreement, is considered a health-care decision. Id. (citing Covenant Health Rehab of Picayune, L.P. v. Brown, 949 So.2d 732 (Miss.2007); Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507 (Miss.2005)). In Hinyub, the execution of the arbitration provision was found to be a health-care decision because agreeing to its terms was a prerequisite to being admitted to the nursing home. Id.
¶43. In the case at hand, Mathews was not required to sign an arbitration provision to admit McFarlan to Forest Hill Nursing Home. The arbitration portion of the contract states, in part:
The Resident and/or Responsible Party understand that (1) he/she has the right to seek legal counsel concerning this agreement, (2) the execution of this Arbitration is not a precondition to the furnishing of services to the Resident by the Facility, and (3) this Arbitration Agreement may be rescinded by written *787 notice to the Facility from the Resident within 30 days of signature.
(Emphasis added). Since the execution of the arbitration agreement was not a prerequisite to the furnishing of services, the arbitration provision was not a health-care decision. Since Mathews only had the authority to make health-care decisions, she did not have the legal authority to bind McFarlan or McFarlan's beneficiaries to an arbitration agreement that was not part of the health-care decision of admitting McFarlan to a nursing home. Because Mathews lacked authority to enter into the arbitration provision in the admissions agreement, I would agree with the reasoning of the supreme court in Hinyub, 2005-CA-01239-SCT (¶18), and find that the arbitration agreement is invalid. The supreme court did not discuss the issue of whether Hinyub was a third-party beneficiary to the contract. Therefore, I would find that a discussion of whether or not McFarlan was a third-party beneficiary to the contract need not be reached.
¶44. Without some evidence that McFarlan was incompetent to sign the contract or that her granddaughter had authority to make legal decisions for her, Mathews did not have authority to waive McFarlan's constitutional right to a jury trial. I would affirm the decision of the trial court finding there was not a binding arbitration agreement.
MYERS, P.J., Joins this Separate Opinion.
NOTES
[1] The difference between the outcome of Hinyub and the outcome of the present case is due to the fact that, in Hinyub, the parties did not argue, and the supreme court did not address, the issue of whether the patient was a third party beneficiary to the admissions agreement. That issue is discussed in part c of this section, infra.
[2] We note that the Mississippi Supreme Court denied the motion for rehearing filed in this case on March 6, 2008.