# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00276-SCT

*BARNES, BROOM, DALLAS AND McLEOD, PLLC*

*v.*

*ESTATE OF MARILYN I. CAPPAERT,*
*DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/2007 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JAMES GARY McGEE, JR. |
| ATTORNEYS FOR APPELLEE: | DAVID M. SESSUMS |
| NATURE OF THE CASE: | CIVIL – CONTRACT |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL – 10/09/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND GRAVES, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case concerns a dispute over attorney's fees incurred in the administration of an

estate.  Finding that the chancellor did not err in reducing the requested attorney's fees, we

affirm.

## Facts

¶2.     After the death of Marilyn I. Cappaert, Harris H. Barnes, III, was asked by Todd

Boolos, the family accountant, to provide legal services for her estate. Barnes testified that he had worked for the Cappaerts for many years and Boolos always initiated any engagements for the family. Barnes sent Boolos a memorandum explaining the services to be rendered and a letter outlining the fee schedule. The Estate was to be billed at the rate of $225 per hour for Barnes' services, and the estimated total fee was in the range of $8,500 to $12,000.

¶3. Barnes represented the Estate for eleven months before he was terminated. When the Estate refused to pay his legal fees, Barnes, Broom, Dallas and McLeod, PLLC, filed a complaint asking for $21,243.69 in attorney's fees and for the costs of collection. A hearing was held and the chancellor found that Barnes was entitled only to $15,000 and that he could not recover attorney's fees related to the collection action.

## Issues

¶4. The parties raise three issues: (1) whether there was a contract between Barnes and the Cappaert estate; (2) whether Barnes' fees were unreasonable; and (3) whether Barnes was entitled to the costs of collection.

## Standard of Review

¶5. This Court "always review[s] a chancellor's findings of fact, but . . . will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 (Miss. 2007) (quoting *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)).

2

¶6.     Regarding attorney's fees, "[i]t is well-settled that the amount allowable as attorney's fees for services rendered in the administration of an estate rests within the sound discretion of the chancery court." *Harper v. Harper*, 491 So. 2d 189, 200 (Miss. 1986) (citing *Brown v. Franklin*, 166 Miss. 899, 145 So. 752 (1933); *Schwander v. Rubel*, 221 Miss. 875, 75 So. 2d 45 (1954)).

### Discussion

**I. Whether There Was a Contract Between Barnes and the Cappaert Estate.**

¶7.     Barnes argues that the chancellor erred in finding that there was no contract between him and the Estate. However, the judgment did find that there was a contract. The opinion stated that Boolos bound the executor to an agreement for services when he acted as an agent with apparent authority.

¶8.     The Cappaert Estate, recognizing that the chancellor found that there was a contract, argues in its cross-appeal that Boolos was not an agent of the executor, BancorpSouth, and therefore did not have the authority to retain Barnes as counsel. The Estate argues that because the chancellor erred in finding that Boolos was BancorpSouth's agent, there was no contract, and Barnes could proceed only in quantum merit.

¶9.     An agency relationship can be established through either actual or apparent authority. *Certain Underwriters at Lloyd's of London v. Pettey*, 770 So. 2d 39, 45 (Miss. 2000). The question of whether the evidence establishes apparent authority is ordinarily a question of fact for the fact finder. *Ciba-Geigy Corp. v. Murphree*, 653 So. 2d 857, 872 (Miss. 1994). While Boolos did not have express authority to act as an agent for the executor, the

3

chancellor found that he acted with apparent authority, and thus bound BancorpSouth to an agreement for legal services.

¶10.   "Apparent authority exists when a reasonably prudent person, having knowledge of the nature and the usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Eaton v. Porter*, 645 So. 2d 1323, 1325 (Miss. 1994) (quoting *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987)).  The three situations in which an agent has apparent authority to bind a principal are "(1) acts or conduct by the principal indicating the agent's authority; (2) reasonable reliance by a third party upon those acts or conduct; and (3) detrimental change in position by the third party as a result of such reliance." *Id.* (citations omitted).

¶11.   Regarding the first element, BancorpSouth, as executor of the estate, indicated that Boolos had the authority to retain legal services on its behalf because the bank made no objection to Barnes' representation until he was terminated.  In other words, BancorpSouth ratified Boolos' conduct.  "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Autry v. State*, 698 So. 2d 84, 87 (Miss. 1997) (quoting *Carter v. Hurst*, 234 So. 2d 616, 620 (Miss. 1970)).  Ratification may be established through affirmative acts or inaction. *Id.*  In this case, Barnes provided the bank with statements every month, and BancorpSouth continued to allow Barnes to provide legal representation.  Barnes also filed several petitions on behalf of

4

BancorpSouth that were signed by the bank's trustee.[1] Thus, the chancellor was correct in finding that Barnes proved the first element required for apparent authority.

¶12. As for the second element, the chancellor found that Barnes reasonably relied on Boolos' actions when Boolos negotiated the contract. According to the testimony, Boolos had worked for the Cappaerts for many years and he always negotiated the terms of the family's legal representation. Therefore, Barnes had legitimate reasons to believe that Boolos could negotiate contracts on behalf of the Estate.

¶13. Finally, the chancellor found that Barnes suffered a detriment by performing several hours of legal work without compensation, and this Court agrees that this constituted a "detrimental change in position." *Id.*

¶14. Because Barnes demonstrated that Boolos had apparent authority to act on behalf of the bank, the chancellor was correct in finding that there was a contract for legal services between Barnes and BancorpSouth.

**II. Whether Barnes' Fees were Unreasonable.**

¶15. Barnes alleged in his complaint that he was owed $21,234.69, of which $5,062 was billed for his tax work. The parties did not dispute that Barnes' fees for his tax work were reasonable, but the plaintiffs alleged that the other $16,172.69 in fees was excessive. The

---

[1]These included: Petition for Probate of Will and for Letters Testamentary; Petition for Approval to Sell Vehicle; Notice to Creditors; Petition for Approval for Partial Distribution of Estate Assets, for Partial Executor's Fees, for Partial Attorney's Fees and for Partial Accountant's Fees; and Amended Petition for Approval for Partial Distribution of Estate Assets, for Partial Executor's Fees, for Partial Attorney's Fees and for Partial Accountant's Fees.

5

chancery court agreed with the plaintiffs and found Barnes was entitled only to $15,000.

Barnes has appealed the award, arguing he was entitled to the entire billed amount.[2]

¶16.    The chancery court noted in its opinion the eight factors used to determine what constitutes a reasonable fee:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

*In re Estate of Johnson*, 735 So. 2d 231, 237 (Miss. 1999) (internal citations omitted). Applying these factors to the evidence, the court found that roughly $6,000 of Barnes' fees were unreasonable.

---

[2]It is unclear whether the Estate is also appealing the award.  The Estate's brief declares that "[a]lthough the Estate would like to see this Court reverse and render by reducing Barnes' fee to the sum of $10,000, the Estate and the undersigned believe what this Court is required to do under the law and the facts of this case is to affirm Chancellor Barnes' decision."

¶17. Although the chancellor's opinion did not make factual findings as to the specific charges that were unreasonable, it summarized the evidence presented at trial – most importantly, the expert testimony of Kenneth Rector.[3] Rector testified that Barnes' bill for his work was reasonable in light of his expertise and the time he spent researching and writing a requested tax opinion. However, in his opinion, the amount of time spent on certain tasks was excessive, including opening the estate (23 hours), the sale of Ms. Cappaert's car (12.4 hours), obtaining fee approval for attorney's fees (21.9 hours), removal and reinstatement of BancorpSouth as executor (14.0 hours), delivery of bequests (4.6 hours), and the release of a lien on California property (10.3 hours). He also testified that the number of hours billed for each task performed by an associate attorney was in excess of what a reasonable attorney with the same experience would need to complete it. Rector also noted that these tasks were not routine and not complicated and that Barnes should not have billed for secretarial duties because they should have been included in overhead expenses. He ultimately concluded that $10,000 was a fair amount of fees for the work performed by the firm.

¶18. The opinion also noted the conflicting testimony of Barnes. Barnes argued that ancillary work resulted in higher fees than the original estimate of $8,500 to $12,000. Barnes specifically referred to the removal and subsequent rehire of BancorpSouth as executor, the

_____

[3]Although Barnes made no objection to admitting Rector as an expert, he argued after trial that Rector was "grossly unqualified." Barnes makes the same argument on appeal. The chancery court found, and this Court agrees, that because Barnes did not object to the testimony at trial, and because Rector testified to his extensive estate practice, it was not error for the court to consider his testimony.

sale of the Estate's vehicle (even though the will permitted such a sale without court approval), and other work involving estate property in California and Florida.

¶19.    In light of this evidence, and because the court utilized the proper legal standard, it cannot be said that the chancellor abused her discretion in finding that Barnes was entitled to $15,000.

**III. Whether Barnes was Entitled to the Costs of Collection.**

¶20.    The basis of Barnes' argument is that he was entitled to the costs of collection because his fees constituted an open account. *See* Miss. Code Ann. § 11-53-81 (Rev. 2002) ("[the defendant] shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff."). Although the chancellor found that Barnes' fees were an open account, the court did not find that he was entitled to the costs of collection.

¶21.    This Court finds it unnecessary to address this issue. Even if attorney's fees constitute an open account, Barnes is not entitled to the costs of collection under the statute. For entitlement to attorney's fees pursuant to Section 11-53-81, a plaintiff must secure a "judgment on the claim" in the amount sued for. ***Rainbow Rental and Fishing Tools, Inc. v. Delta Underground Storage, Inc.***, 542 So. 2d 258, 263 (Miss. 1989). In ***Rainbow Rental***, Rainbow filed a complaint against Delta, asking for $32,357.98 on an open account, but the trial court found that Rainbow was entitled only to $5,529. *Id.* This Court concluded that Rainbow was not a "prevailing party" under the open account statute, and was not therefore

8

entitled to attorney's fees.[4]  *Id.*  Like ***Rainbow***, because the judgment in this case was partially in favor of both parties, Barnes was not entitled to attorney's fees for collecting the debt under the statute.

¶22.   Moreover, "[i]n breach of contract cases, attorney fees generally are not awarded absent provision for such in the contract or a finding of conduct so outrageous as to support an award of punitive damages."  ***Garner v. Hickman***, 733 So. 2d 191, 198 (Miss. 1999).  In the present case, there was neither a specific contractual provision nor a finding that would support punitive damages.  Accordingly, the chancellor did not abuse her discretion in denying Barnes the costs of collection.

**Conclusion**

¶23.   For the foregoing reasons, the judgment awarding attorney's fees in the amount of $15,000 is affirmed.

**¶24.   AFFIRMED ON DIRECT APPEAL AND CROSS-APPEAL.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, AND LAMAR, JJ., CONCUR.  DICKINSON AND RANDOLPH, JJ., NOT PARTICIPATING.**

---

[4]This Court noted that the posture of the case would have been different if "the amount recovered lacked but a few dollars being the entire amount sued for on open account."  *Id.*